# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CASE NO.: 1:14-CR-12-TLS |
| | ) | |
| GUADALUPE QUINTANILLA | ) | |

## OPINION AND ORDER

The Defendant, Guadalupe Quintanilla, is charged with possessing with intent to distribute cocaine. He challenges whether the search of his vehicle, which led to the discovery of the cocaine, was constitutionally permissible.

The Court conducted evidentiary hearings on April 8, 2015, and August 13, 2015. The Court heard testimony from Indiana State Trooper, Adam Buchta, who initiated the stop and conducted the search; and from Trooper Bradley Smith, who also took part in the search. The Court admitted the following exhibits: a consent form, a warning citation, and a disk with video clips. The Defendant has filed a post-hearing Brief in Support of Motion to Suppress [ECF No. 45], to which the Government responded [ECF No. 48]. On February 5, 2016, the Defendant filed a Reply [ECF No. 49].

## FACTUAL BACKGROUND

Trooper Adam Buchta has been employed by the Indiana State Police since 2007. His experience includes serving as a road trooper, K-9 officer, field training officer, and tactical intervention platoon team member. He is also a Level 3 motor carrier inspector, meaning that the United States Department of Transportation (DOT) considers him qualified to conduct inspections of log books and other documentation that commercial motor vehicles are required to

maintain for lawful operation.

Trooper Buchta initiated the traffic stop of the Defendant's vehicle on February 1, 2014, around 7 PM. A task force officer had assigned Trooper Buchta to watch for the vehicle, stop it, and have his drug dog sniff for drugs. Trooper Buchta spotted the tractor trailer traveling eastbound on U.S. Highway 30 in Whitley County. He followed it and observed it make a lane change (left to right) without signaling, and observed the truck's rear lights flickering on and off. The truck also drove halfway onto the right shoulder.

Trooper Buchta stopped the tractor trailer, and asked the Defendant for his license, registration, and log book. The Defendant said he was experiencing a shortage on his lighting connection, and admitted that he drove on the shoulder because he was messing with the dog he had riding along with him. Trooper Buchta saw that the Defendant had a small dog with him. After a few minutes, Trooper Buchta asked the Defendant to move to a nearby parking lot for safety reasons.

Trooper Buchta asked the Defendant to bring all paperwork for the trip to the front seat of the police cruiser. Trooper Buchta began going through the Defendant's log book to check for DOT compliance. During questioning, the Defendant was visibly shaking, stuttering, and avoiding eye contact. Trooper Buchta noticed that the Defendant had been waiting in McAllen, Texas, for nine days, even though he was licensed in Indiana. Trooper Buchta did not believe the Defendant's explanation that he had waited that long for a legitimate load, as it was not industry standard to have to wait that long for a load. Trooper Buchta took into account that the area of Texas where the Defendant was for nine days was a "hot spot" for narcotics coming into the United States, and that a trucker does not make money when he is not moving. In response to

further questioning about his nine-day layover, the Defendant stated that he was waiting out bad weather, and added that he was also visiting family. According to the Defendant's records, he had taken many short day trips, with the long cross-country trip standing out as atypical. Trooper Buchta also noted that the Defendant's 48-foot trailer was suspicious because industry standard is 53 feet, especially for cross-country trips, because it can hold two more pallets of product. Trooper Buchta thought that the Defendant had avoided the most direct route, which would have put him on Route 55, a road where Illinois police are notorious for stopping vehicles for drug activity. Trooper Buchta also thought that I-80 was the more typical route, not highway 30. Trooper Buchta testified that he considered the fact that the Defendant's truck was "tricked out" with extra lights and chrome to be suspicious because driving a truck was not a highly lucrative job. Unlike most trucks he saw on the road, which were poorly maintained, the Defendant had obviously put money into his. Upon questioning, the Defendant admitted that he had a marijuana conviction from a long time ago, which had involved hundreds of pounds of marijuana obtained from Texas.

    While he was completing his inspection, Trooper Buchta called Trooper Smith, who was waiting nearby. When Trooper Smith arrived, Trooper Buchta deployed his drug dog, Wheeler, to perform a sniff for the detection of narcotics. After Wheeler's positive alert, Trooper Buchta obtained the Defendant's permission to search his vehicle. The search led to the recovery of a false floor in the sleeper area, which contained numerous kilograms of cocaine. The Defendant was handcuffed and arrested. In addition, Trooper Buchta issued the Defendant a warning citation for his paperwork and vehicle violations.

**DISCUSSION**

The Defendant has moved to suppress and exclude any and all evidence seized when Trooper Buchta stopped his tractor trailer on the evening of February 1, 2014. Initially, the Defendant maintained that he was stopped without probable cause or reasonable suspicion that he was violating any laws, and that the Trooper's search of the vehicle exceeded the limits of an investigatory stop, and was conducted without a warrant or exigent circumstances, or without probable cause that the vehicle contained contraband.

The Government responded that the initial traffic stop was based upon a traffic violation, that the Trooper thereafter conducted an appropriate motor carrier safety inspection, that a drug dog alert provided probable cause to search the truck pursuant to the automobile exception, and that the Defendant provided voluntary oral and written consent to search the truck.

In his post-hearing briefing, the Defendant admits that the traffic violations provided a basis for the initial stop. He asserts that suppression of the evidence is warranted by the Supreme Court's ruling in *Rodriguez v. United States*, 135 S. Ct. 1609 (2015). He maintains that the issue in this case is "whether, under the circumstances, Trooper Buchta could extend the traffic stop of [the Defendant] while he deployed Wheeler." (Def.'s Reply 2, ECF No. 49.)

"[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez*, 135 S. Ct. at 1614 (citations omitted). These "matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (internal citation omitted). But once

4

"the tasks tied to the traffic infraction are—or reasonably should [be]—completed," the "[a]uthority for the seizure . . . ends" unless the Government can show an exception to the Fourth Amendment that allows the stop to continue. *See Rodriguez*, 135 S. Ct. at 1614. One exception derives from *Terry v. Ohio*, and it permits elongation of a traffic stop if reasonable suspicion of additional criminal activity emerges (or existed in the first place). *Id.* ("An officer . . . may conduct certain unrelated checks during an otherwise lawful traffic stop . . . [but] may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.").

The Defendant argues that the deployment of Wheeler prolonged the stop beyond what was necessary to complete the motor carrier inspection and issue citations. The Government responds that at the time of the dog alert, Trooper Buchta had not completed the motor carrier inspection, had not completed the written warnings, and had not resolved the equipment problem. Additionally, the Government asserts that Trooper Buchta had reasonable suspicion of criminal activity, which justified extending the stop for the short time it took for Trooper Smith to join him and to confirm or dispel, with Wheeler's assistance, his suspicions. *See United States v. Sanford*, 806 F.3d 954, 959 (7th Cir. 2015) (holding that the criminal histories an officer uncovered during a computer search gave him reasonable suspicion of criminal activity which justified prolonging the stop for the eight minutes it took for the dog to arrive and confirm or dispel his suspicions).

Reasonable suspicion exists if the officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Although reasonable suspicion requires more

5

than a mere "hunch," it is a measure of suspicion less demanding than that required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *see also Navarette v. California*, —U.S. —, 134 S. Ct. 1683, 1687 (2014) (The "level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause.") (citation omitted). It is a "commonsense, nontechnical" concept dealing with "the factual and practical consideration of everyday life on which reasonable and prudent men, not legal technicians, act." *Ornelas v. United States*, 517 U.S. 690, 695 (1996) (internal quotations marks omitted).

The Court agrees that, by the time Trooper Buchta deployed Wheeler, he had sufficient reasonable and articulable suspicions that the Defendant was transporting drugs. He articulated several specific factors that contributed to his reasonable suspicion. Trooper Buchta started the inspection by asking questions concerning the Defendant's log book and his recent trip from the border town of McAllen, Texas. During this conversation, the Defendant exhibited visible signs of nervousness so extreme that Trooper Buchta believed this nervousness to be more than what is typical with a traffic stop. The Defendant was visibly shaking, stuttering his words, failing to make eye contact, and fidgeting. Trooper Buchta thought it relevant, not only that the Defendant had just come from a known shipment point for drugs but, that he had spent nine days there. Trooper Buchta believed that this delay was consistent with him waiting on a drug load rather than a legitimate load, which would have been ready to go so that the driver did not lose money waiting around. To explain the delay, the Defendant stated that he was waiting on bad weather. When Trooper Buchta questioned why it lasted nine days, the Defendant advised that he was visiting family. Trooper Buchta noted that the Defendant's trailer was 48 feet, instead of 53 feet,

which he knew from his experience was not the common length used by commercial truckers engaged in hauling legitimate loads. In his training and experience, he observed that drivers hauling narcotics used 48-foot trailers. Additionally, the Defendant's log book showed short day trips from Fort Wayne and back, with the long, cross-country trip to Texas being an outlier. Trooper Buchta also believed that the Defendant had intentionally avoided Route 55 in Illinois because it is known to be heavily patrolled. The Defendant also had a previous drug conviction that involved a large quantity of drugs. All of these factors increased, rather than allayed, Trooper Buchta's suspicions that the Defendant was transporting illegal drugs in his tractor trailer.

The Defendant makes several arguments against the reasonableness of Trooper's Buchta's articulable suspicions. He submits that the Government "cites no evidence to support the apparent contention that those who stutter are lying or acting suspiciously," or that "those who fidget and do not make eye contact are somehow not telling the truth or have something to hide." (Def.'s Reply 2–3, ECF No. 49.) The Defendant notes that he explained to Trooper Buchta that he was shaking because he was cold. The Defendant argues that his explanation for the nine-day layover, that he was waiting on weather and had relatives, was succinct, not suspicious. With regard to the length of his trailer, the Defendant argues that if his loads did not require a 53-foot trailer, it would have been foolish and inefficient to use one. Because Trooper Buchta did not testify what the bill of lading indicated that the Defendant was hauling, there is no way to know whether a 53-foot trailer would have been more cost efficient. The Defendant argues that a flashy cab should have made his vehicle less suspicious, as a drug courier would not want to draw attention to himself. The Defendant takes issue with Trooper Buchta's concerns

7

about his route, noting that either road was suitable for travel to his destination, and numerous reasons could account for his choice. The Defendant argues that his previous conviction, while marginally relevant, must be tempered by the fact that it occurred in 1985.

Perhaps the Defendant did really like the truck stops on Route 57 better than the ones on Route 55. Perhaps he was merely visiting family while he waited on a load and waited for better weather. Perhaps he was cold and did have a speech impediment. Perhaps he had sensible business reasons to drive a 48-foot trailer instead of a 53-foot trailer. Perhaps he had lawful sources of money to spend on cosmetic enhancements to his cab. While there may be an innocent explanation for each of the factors taken separately, viewing the circumstances in combination, they created enough ambiguity and constituted reasonable suspicion of drug activity sufficient to warrant further investigation. *See United States v. Sokolow*, 490 U.S. 1, 9 (1989) (each factor standing alone is insufficient, but "taken together they amount to reasonable suspicion"). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002); *see also United States v. Figueroa-Espana*, 511 F.3d 696, 703 (7th Cir. 2007) (holding that "even when innocent explanations exist for individual factors taken separately, reasonable suspicion may arise when the factors are taken together"). "Reasonable suspicion can arise from behavior that may in other circumstances be considered innocent; in other words, context matters." *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015) (quotation marks omitted). For example, returning from a known source city for drugs may not, by itself, be indicative of drug activity. But it creates reasonable suspicion when it is combined with the rational inferences that an experienced drug interdiction officer and motor carrier inspector can make from a 48-foot, upgraded truck; a nine-day layover

in that known drug source city; a cross-country trip by a short-trip driver; visible signs of nervousness; and a prior drug conviction. Trooper Buchta identified numerous factors that raised suspicion based on his special knowledge and expertise of the trucking industry and the drug trade, but also on "commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (noting that courts cannot reasonably demand scientific certainty about inferences from suspicious behavior).

The Court agrees that the record was not adequately made before this Court to find that Trooper Buchta's inferences about the Defendant's selection of roads were reasonable. However, even without consideration of this factor, sufficient specific and articulable facts remained to reasonably support the extension of the stop for a few minutes longer to deploy Wheeler and resolve any ambiguity about his conduct. Trooper Buchta relied on more than "inchoate and unparticularized suspicion or 'hunch,' but . . . specific reasonable inferences which he [was] entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27. There is no basis to suppress the evidence discovered as a result of the drug dog's positive alert and the subsequent search of the Defendant's vehicle.

## CONCLUSION

For the reasons stated above, the Court DENIES the Defendant's Motion to Suppress [ECF No. 29]. The Court will schedule the Final Pretrial Conference and trial dates by separate order.

SO ORDERED on February 22, 2016.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION