### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

UNITED STATES OF AMERICA )

)

v.                                                       )               Cause No. 1:14-CR-12-HAB

)

GUADALUPE QUINTANILLA            )

### OPINION AND ORDER

Defendant Guadalupe Quintanilla ("Quintanilla") filed a pro se Emergency Motion for Reduction in Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 128) on April 29, 2020. After his motion was referred to the Federal Community Defender for representation, the FCD filed a Brief in Support of Motion for Compassionate Release (ECF No. 140) on July 28, 2020. The Government filed its Response in opposition (ECF No. 144) on August 14, 2020. The time for a reply has passed with no filing by Quintanilla. The matter is now ripe for determination.

**A.     Procedural History**

On February 1, 2014, Quintanilla was stopped while driving a tractor-trailer in Whitley County, Indiana. After receiving Quintanilla's consent to search, officers found a hidden compartment containing 38 individually wrapped bricks of cocaine, each weighing one kilogram. After being Mirandized, Quintanilla told the officers that his job was to drive the truck and then park it at a designated location, at which time unidentified individuals would come and pick up the drugs.

As a result of the stop, Quintanilla was charged with a single count of Possession with Intent to Distribute 5 kg or More of Cocaine in violation of 21 U.S.C. § 841(a)(1). Quintanilla entered into a plea agreement on March 22, 2016. He pled guilty to the single count of the Indictment and, for unclear reasons, agreed to an enhancement under 21 U.S.C. § 851(a)(1). The

effect of the § 851 enhancement was to take his guideline sentence from 87 to 108 months to a statutory mandatory minimum of 20 years. Pursuant to the plea, Quintanilla was sentenced on August 31, 2017, to a term of 240 months' imprisonment, with 10 years' supervised release to follow. Quintanilla is currently being housed at FCI Elkton.

**B.     Legal Discussion**

**1.     *Extraordinary and Compelling Circumstances***

The Defendant's Motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

(i) extraordinary and compelling reasons warrant such a reduction …

… and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

Because the Defendant, not the Director of the BOP, filed the motion, the Government asserts that the Defendant must first demonstrate that he meets the statutory exhaustion requirement to proceed further. Quintanilla asserts that he satisfied the exhaustion requirement by sending a request to the warden at FCI Elkton, which request was denied on April 24, 2020. The

Government agrees that Quintanilla has satisfied the exhaustion requirement. Accordingly, the Court will consider whether Quintanilla has shown "extraordinary and compelling" reasons to support his release.

Quintanilla asserts that his age and his documented health problems, which he claims put him at risk for additional complications if he contracts COVID-19, satisfy the requirements of § 3582(c)(1)(A)(i). Quintanilla is 75 years old and suffers from hypertension, hyperlipidemia, acquired absence of kidney due to nephrectomy for mass, gastroesophageal reflux disease with esophagitis and disorder of the prostate. He further suffers from liver disease, a complex cyst in his remaining kidney, bone lesions, and an enlarged prostate. Quintanilla is on seven different medications for his conditions.

The foregoing medical summary is guilty of burying the lede. On May 24, 2020, Quintanilla tested positive for COVID-19. Quintanilla was monitored by BOP medical staff for two weeks and appears to have had few, if any, symptoms from the disease. Quintanilla notes, however, that he has not had a doctor's appointment since he tested positive for COVID-19 so, he claims, it is unclear whether he is suffering from any ongoing complications from the disease.

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Council*, 2020 WL 3097461, at *5–7 (N.D. Ind. June 11, 2020); *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

The Court finds that Quintanilla has demonstrated extraordinary and compelling reasons supporting his release. His age[1], hypertension and liver disease[2] all potentially put him at an increased risk of severe illness from COVID-19. Even those who experience only mild COVID-19 symptoms have been found with long-term damage to their heart, lungs, and brain, and blood clots in their lungs, legs, liver, and kidneys. Given Quintanilla's pre-existing organ conditions, damage to Quintanilla's liver and kidneys would be particularly serious. In short, Quintanilla presents a virtual perfect storm of conditions which put him at risk from COVID.

The Government counters by noting, quite correctly, that whatever his theoretical risk of complications may be he has contracted COVID-19 and has suffered from only mild symptoms. But as Quintanilla responds, there are no conclusive scientific tests demonstrating that an individual cannot become re-infected with the disease. Nor is the existence of a prior COVID diagnosis a legal bar to compassionate release. *See*, *e.g.*, *United States v. Brown*, No. 2:18-CR-360 KOB-JEO (001), Doc. 35 (N.D. Ala. May 22, 2020); *United States v. Fischman*, No. 16-cr-00246-HSG-1, Doc. 76 (N.D. Cal. May 1, 2020) (granting compassionate release for COVID-19 positive defendant who had not shown symptoms); *United States v. Huntly*, No. 13-0119, Doc. 263 (D.D.C. May 5, 2020) (granting compassionate release where defendant tested positive and ordering 14-day quarantine); *United States v. Kriglstein*, No. 16-cr-00663, Doc. 60 (D.N.M. Apr. 27, 2020) (ordering that COVID-positive defendant be released 4 days from the date of the order).

Quintanilla's conditions become even more alarming when one considers where he is being held. He is being held at FCI Elton, where earlier this year conditions deteriorated to the point that the United States District Court for the Northern District of Ohio ordered the BOP to identify medically vulnerable individuals and expedite their transfer from the facility, either to another

---

[1] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html
[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

facility or supervised release. *See Wilson v. Williams*, 2020 WL 1940882 (N.D. Ohio April 22, 2020), *vacated*, 961 F.3d 829 (6th Cir. 2020). Since the beginning of the outbreak, FCI Elkton has reported 946 positive tests[3], the second most of all the facilities in the BOP. While the facility only reports 4 active cases among inmates and 2 among staff as of the date of this Opinion[4], it is unclear whether that is the result of any action taken by the BOP or simply the result of the virus having run through all its potential hosts. In any event, there is nothing about FCI Elkton's handling of the outbreak to date that leaves the Court with any confidence that it could handle a future flare up of COVID-19. *See, Melgarejo*, 2020 WL 2395982, at *3 ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus.").

Stated plainly, Quintanilla is an individual acutely at risk of serious complications from COVID-19 who is housed in a facility known nation-wide for its inability to adequately combat the virus. If he cannot demonstrate extraordinary and compelling reasons for compassionate release, the Court struggles to imagine a person who could. Quintanilla satisfies the conditions set forth in 18 U.S.C. § 3582(c)(1)(A)(i), and his motion will be granted.

**2.      *§ 3553(a) Factors***

The Court further concludes that the § 3553(a) factors support release. There is no debate as to whether Quintanilla's conduct was serious; even he concedes that it was. Thirty-eight kilograms of cocaine is an enormous amount, one that would not be trusted to someone not

---

[3] https://www.bop.gov/coronavirus/
[4] *Id.*

6

intimately involved in the trafficking operation. He deserved, and received, a significant stint in a federal penitentiary.

However, the Court must be mindful of the peculiar circumstances surrounding the length of Quintanilla's sentence. Quintanilla's plea contained an enhancement under 21 U.S.C. § 851(a)(1). In the Court's experience, pleas are generally entered to *avoid* the addition of a § 851 enhancement; the Court cannot think of another case where the enhancement was agreed to as part of a plea. The Court has no doubt there was a reason for the enhancement here, but its application to Quintanilla does little to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6).

This is to say nothing of the fact that Quintanilla could not even receive the § 851 enhancement if he was sentenced today. The enhancement was applied in this case because, at the time, Quintanilla's 1992 conviction for Engaging in Organized Criminal Activity was treated as a "serious drug felony." However, the First Step Act of 2018 changed the definition of that term. A serious drug felony under the current law means an offense for which:

> (A) the offender served a term of imprisonment of more than 12 months; and
>
> (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense.

FIRST STEP ACT OF 2018, PL 115-391, Section 401(a)(1), December 21, 2018, 132 Stat 5194. While Quintanilla's 1992 conviction sounds serious, involving nearly a ton of marijuana, he received no imprisonment at all as a sentence. Indeed, even after violating probation his sentence was modified from 5 years to 10 years of probation. Quintanilla would have no predicate offense to support a § 851 enhancement today, leaving the guideline sentence in place.

Under the Guidelines, Quintanilla faced a sentence of 87 to 108 months. Assuming a sentence at the low end and factoring in good time credit, Quintanilla could have been expected to

serve approximately 74 months. He has served approximately 79 months as of the date of this Opinion. Quintanilla's conduct, then, does not support additional incarceration in the face of his extraordinary and compelling circumstances.

The Court rejects the Government's contention that Quintanilla poses an ongoing threat to the community. The Government calls his criminal history "significant and varied," but another word also describes it: old. Prior to the instant offense, Quintanilla's most recent conviction was last century: January 2, 1999. His past convictions were so old that they could not be counted in calculating his criminal history score, resulting in a criminal history category of I. There is no indication that Quintanilla has posed any disciplinary issues during his current incarceration. Quintanilla need not be congratulated for his past, but nothing about that past leads the Court to believe that he will menace the public if he is released. The Court finds that the time he has served in the BOP is sufficient, but not greater than necessary, to serve the purposes of sentencing.

## C.    Conclusion

For the foregoing reasons, Quintanilla's requests for compassionate release (ECF Nos. 128, 140) are GRANTED. His previously imposed sentence of imprisonment of 240 months is reduced to time served.

This order is stayed for up to fourteen days, for the verification of Quintanilla's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure his safe release. Quintanilla shall be released as soon as a residence is verified, a release plan is established, appropriate travel arrangements are made, and it is safe for the defendant to travel. There shall be no delay in ensuring travel arrangements are made. If more than fourteen days are needed to make appropriate travel arrangements and ensure his safe release, the parties shall immediately notify the court and show cause why the stay should be extended.

Quintanilla's previously imposed term of supervised release and conditions of supervised release are unchanged.

SO ORDERED on September 17, 2020.

 s/ Holly A. Brady
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

9